UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE BANKS,

    Petitioner,

vs                                                      Case No: 04-70318
                                                                   Honorable Victoria A. Roberts
KENNETH ROMANOWSKI,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
PETITION FOR WRIT OF HABEAS CORPUS**

**I.    INTRODUCTION**

This matter is before the Court on Ronnie Banks's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254. The Petitioner was convicted on July 9, 1999 of one count of premeditated murder, M.C.L. 750.316, two counts of assault with intent to murder, M.C.L. §750.83, one count of assault with intent to do great bodily harm less than murder M.C.L. §750.84, and possession of a firearm during the commission of a felony ("felony-firearm"), M.C.L. §750.227b. The Petitioner seeks habeas relief on all counts. For the reasons set forth below the Court **DENIES** the Petitioner's request.

**II.    BACKGROUND**

Petitioner was charged with two counts of first-degree murder for the killings of

Eugene Whitlow and Tyrone Mahone, under separate theories for each count - premeditation and deliberation, and/or felony murder. Petitioner was also charged with three counts of assault with intent to commit murder, and a count of carrying a firearm during the commission or attempt to commit a felony. Charles Williams, who the Petitioner identifies as a cousin but is actually the Petitioner's friend, was also charged, but the case was disposed of before trial. Robert Breham, Petitioner's thirteen year old cousin, was charged in juvenile-court.

A jury convicted Petitioner of one count of premeditated murder, two counts of assault with intent to murder, one count of assault with intent to do great bodily harm less than murder, and felony-firearm. He was found not guilty on one count of premeditated murder and two counts of felony murder. The Petitioner was sentenced to the statutorily mandated two years for felony-firearm, consecutive to life in prison without parole, for the first-degree murder conviction; two life sentences for the assault with intent to commit murder convictions; and, 80 to 120 months for the assault with intent to do great bodily harm less than murder conviction.

At trial Petitioner admitted that on November 8, 1998 he went to the home of Jack Adams located at 11135 Whithorn, Detroit, Michigan to sell crack to any willing buyer. His cousin, Breham, and friend, Williams, accompanied him. On November 8, 1998, Adams returned from his painting job, found his house full of friends there to use his phone. These friends included Eugene Whitlow ("Boo"), Tyrone Mahone, Jacqueline Stokes, Stacey Ingram, and Ivan Watson ("Chuck").

Boo was known for being the "neighborhood smoker" and had allegedly been

smoking crack cocaine for three days straight. Boo, a Nation of Islam follower, was angry with Adams for comments Adams made days earlier about Allah that upset Boo. Boo was angry with Watson for hitting Boo's girlfriend in the head. He held everyone at the home hostage on November 8, 1998. Boo was armed with a 9mm automatic, loaded with a clip holding approximately 30 bullets.

Boo had been steadily smoking crack. He threatened to kill Adams for his comments about Allah and forced Stokes to kiss him, saying he would "fuck her next" since Chuck would be "gone." When Petitioner arrived, he was made to stand against the wall and was searched. Boo made the Petitioner empty his pockets of money. He then questioned the Petitioner and others and became angry when he learned that Breham was from the west side of the city. The Petitioner tried, unsuccessfully, to talk his way out of the house, and offered Boo drugs.

Mahone was also among those held hostage, with his pregnant girlfriend, Ingram, sitting beside him. After Mahone was killed the police found a gun in his pocket. The gun was not used in these events.

Boo eventually pointed his gun at Adams and pulled the trigger. However, the safety was on so the gun only clicked. Petitioner flinched when this happened. Boo called him "a little bitch" and told him to go into a nearby room. Petitioner stayed in the nearby room for a while. Then, Petitioner rushed Boo and shot him twice in the neck with a handgun he had hidden on his person.

Petitioner then shot three times in the direction of Mahone and Ingram. Mahone was shot in the face and chest. Adams yelled for the Petitioner to stop, but Petitioner fired at him and the bullet grazed the top of Adams' head. Stokes ran to a bedroom, but

Petitioner pursued and shot her. Petitioner then returned to the living room and kicked Boo in the head several times. Petitioner went through Boo's pockets and took money[1] and drugs.  He ordered one of his accomplices to shoot him again. One of the accomplices picked up Boo's gun and shot Boo in the head. Two people were heard laughing during this onslaught.[2]

Mahone was shot ten times. Stokes feigned death when Mahone was gunned down next to her.  She was shot three times while laying motionless on the floor. A bullet went through her jaw, another grazed the top of her head, and a third bullet when through her arm.

At trial, Petitioner claimed that he was shooting only in self-defense and in defense of others. Petitioner claimed he only shot at the two armed men responsible for holding him and his accomplices hostage at gun point. Petitioner also claimed that his accomplices were his cousins. Petitioner stated that Boo pointed his gun at Watson, Adams, and at Petitioner and his accomplices.

Petitioner and his accomplices left the scene of the crime via a cab. The Petitioner ordered the cab to drive around. Police arrived on the scene and were told that the Petitioner lived on the street where the crime took place and had left in a cab. The police waited at the Petitioner's home, and when the cab pulled into the driveway police rushed the cab and arrested Petitioner, Williams, and Breham. The police found

---

[1] It is unclear if the money Petitioner took was Boo's money or the Petitioner's money which Boo had previously taken from him.

[2] There is testimony that Mahone, now deceased, was one of the people laughing.

three hand guns in the cab, one of which was Boo's gun. Later, Petitioner and all his accomplices tested positive for gun shot residue.

At trial, Petitioner admitted he shot Boo, Adams, and Mahone, but claimed he did so in self-defense. Petitioner denied shooting Stokes and Ingram. Petitioner stated he would shoot everyone present if they were a threat to him, but also stated he did not know if they were a threat to him. Petitioner also stated he knew that besides himself and Williams, only Boo and Mahone were armed. Petitioner also admitted he never saw Mahone shoot his weapon.

Later Petitioner testified that he did not know who had weapons and he was just shooting. Petitioner also admitted that Williams, one of his companions, had done some shooting. Despite Petitioner's claim that he was only shooting to protect himself and his accomplices, he admits he shot at Williams.

Petitioner made a statement to the police. Petitioner later stated that he lied in this statement to take the blame from his accomplices, and suggested through his testimony that he was the only one being charged in connection with this incident.

At the close of Petitioner's testimony, the prosecutor sought to admit as evidence an eight page written statement as Petitioner's admission. Defense counsel vehemently objected and this led to a heated exchange between the defense attorney and the court which began in front of the jury and continued after the jury was excused. The court imposed three separate one hundred dollar fines on counsel for contempt of court. The court declined to admit the statement for anything but impeachment purposes, and denied defense counsel's motion for a mistrial.

Prior to closing arguments, the court discussed jury instructions with the

attorneys. The defense requested, and was granted, instructions including lesser included offenses, a self-defense instruction, and a defense of others instruction, but with limited application. The defense objected to the limited application of this instruction. Petitioner claims there was no discussion of an aiding and abetting instruction. Petitioner also claims that the prosecutor based his closing argument on a theory of aiding an abetting. Defense counsel objected, saying there was no indication that the aiding and abetting instruction would be given. The court overruled the objection and gave the instruction.

Defense counsel filed a motion for a new trial on August 6, 1999. The court denied the motion. Defense counsel filed an appeal with the Michigan Court of Appeals on June 15, 2000. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. The Michigan Court of Appeals also denied the Petitioner's August 26, 2002 motion for rehearing and reconsideration.

Also, on June 15, 2000, Petitioner filed a motion to remand this cause to the trial court for an evidentiary hearing so a record could be made in support of Petitioner's claim of ineffective assistance of counsel. The court denied Petitioner's motion.

On September 17, 2002, Petitioner filed an Application for Leave to Appeal in the Supreme Court. The application was denied.

Petitioner seeks habeas relief on the following grounds:

"I. This Court should grant relief where the trial court committed reversible, state and federal constitutional error when it gave inappropriate and confusing instructions on the legal theory of aiding and abetting, giving those instructions, moreover, without advising counsel until after his closing argument that any instruction on aiding and abetting, confusing or otherwise, might be given.

    II.       Michigan prejudicially violated Petitioner's United States Constitutional procedural due process and fair trial rights, as construed by United States Supreme Court precedent, where the trial court unreasonably failed to instruct on self-defense or defense-of-others as a requested defense theory of the case regarding the assault with intent to commit murder charge.

    III.      This Court should grant relief where the trial court's instruction into the province of the jury during the course of ruling on a simple evidentiary objection was so serious in its implications as to compromise Petitioner's constitutionally protected right to a fair trial.

    IV.      This Court should grant relief where this cause should have been remanded to the trial court for a hearing to make it a matter of the record that trial defense counsel was legally ineffective, in violation of Defendant's constitutional right to the effective assistance of counsel.

    V.       This Court should grant relief where Petitioner's state and federal constitutional procedural due process rights to a fair trial were violated due to prosecutorial misconduct.

    VI.      This Court should grant relief where the prosecution's use of Petitioner's prior inconsistent statement as substants [sic] evidence during closing arguments, and the trial court's express ruling that it could be used in that fashion, where that statement could have been nominally admitted by the trial court only for impeachment purposes."

### III.    STANDARD OF REVIEW

28 U.S.C. §2254(d) governs this Court's habeas corpus review of state court decisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceeding unless the adjudication of the claim–
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

An "unreasonable application" occurs when a state court "identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of a prisoner's case." *Id.* A district court must apply an objective test of reasonableness in deciding whether there has been an "unreasonable application." *Id* at 411. The *Williams* Court pointed out that there is a distinction between unreasonable and erroneous, and held that it is not enough to find that a state court decision applied clearly established federal law erroneously or incorrectly; the application must also have been unreasonable. *Id.*

## IV. ANALYSIS

### A. JURY INSTRUCTIONS

#### i. Habeas Claim I: Aiding and Abetting Instruction

The Petitioner asserts that the trial court erred in instructing the jury on aiding and abetting because: the court did not inform the Petitioner prior to counsel's closing arguments of its intention to give the instruction; facts adduced at trial did not support the instruction; and, the court gave an erroneous aiding and abetting instruction. However, "[t]he category of infractions that violate "fundamental fairness" are (sic) very

narrowly defined. Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Estelle v. McGuire,* 502 at 72. Petitioner provides no support for any theory that the Constitution mandates advance notice of jury instructions.

The Petitioner's claim is a matter of state law, and state law was not violated. The Michigan Court of Appeals addressed this issue, examining *People v. Mann*, 395 Mich 472, 479; 236 NW2d 509, 512 (1975). There, the court rejected the petitioner's argument that it "was not proper to give the instruction without first informing counsel so that closing arguments might be shaped accordingly." The Court in *Mann* states:

> "The trial court shall instruct the jury as to the law applicable to the case. If the instruction given correctly states the law as applied to the case, the fact that counsel objects to its being given does not control. Neither the defense nor the prosecution has the option of precluding the court from carrying out the duty of correctly instructing on the law in hopes of forcing an all or nothing verdict. . . ."

*Id.* at 510-1.

The trial court determined that the facts supported an aiding and abetting instruction, and, therefore, instructed the jury on that theory. The Court of Appeals also found that the facts justified the instruction, and found that if there were errors in the instruction itself, those errors were timely cured. *People v. Banks,* No. 227935, at 2 (Mich App July 9, 2002). Factual findings of the state court are presumed correct on habeas corpus review. 28 U.S.C. § 2254(e)(1). The Petitioner presented no clear and convincing evidence to rebut this presumption, and he has not shown the state court's conclusions were an unreasonable application of federal law.

Petitioner also alleges that the failure to inform his counsel of the aiding and

abetting instruction prior to closing argument amounted to a constructive deprivation of counsel at a critical stage of the trial. Petitioner cites *Hunt v. Mitchell,* 261 F.3d 757, 585 (2001), which states "where counsel has no acquaintance with the facts of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel." The *Hunt* case is easily distinguished. In *Hunt,* the Defendant had no time to meet with his lawyer because the lawyer was appointed the day of the trial and was denied even ten minutes to consult with his client. Here, the Petitioner attempts to extend the court's ruling to a case where counsel had ample meetings with his client, was very acquainted with the facts, and failed to argue against an aiding and abetting theory which the facts clearly supported.  The jury instruction did not violate the Petitioner's Sixth Amendment right to counsel at a critical stage of trial.

### ii.  Habeas Claim II: Self-Defense Instruction

The Petitioner alleges the trial court unreasonably failed to give jury instructions on self defense and the defense of others in connection with the assault with intent to commit murder charges. Petitioner states that failure to give this instruction reduced the government's burden of proof. The Court in *Taylor v. Withrow*, 288 F.3d 846 (6th Cir. 2002) states:

> "When there is evidentiary support for a defendant's theory of self-defense, failure to instruct on self-defense violates a criminal defendant's Fifth and Sixth Amendment rights; a criminal defendant is entitled to a self-defense instruction *if there is evidence to support his theory*. In certain circumstances refusing to instruct a jury properly on self-defense can so taint the resulting verdict as to be an error of constitutional dimension."

*Id.* 851-2 (emphasis added).  This case does not present such circumstances. The state

court interpreted Michigan law and found that the conditions necessary to give the self defense instruction with respect to the assault charges were not met. The state court stated the Petitioner claimed he did not shoot Stokes, Ingram, and Adams and, therefore, no instruction of self-defense was justified. There was nothing unconstitutional about the trial court's handling of this instruction.

This case is similar to *David v. Lavinge,* 190 F.Supp.2d 974 (2002), where the court found the failure to give an accessory after the fact instruction did not prejudice the defendant. As in *David,* the self-defense argument here was ancillary to defense counsel's main argument that the defendant did not commit the assaults because he did not shoot the victims. The Petitioner claimed that there should have been a "transferred intent" instruction regarding the three assault victims. Even if the court gave the transferred intent instruction, the result would be the same because the jury rejected the self-defense argument with respect to the murder charges when it found the Petitioner guilty of murder. Therefore, the failure to give the self-defense instruction with respect to the assault charges did not prejudice the defendant.

### B. HABEAS CLAIM III: TRIAL COURT INTRUSION INTO THE PROVINCE OF THE JURY

The Petitioner objects to the following comment:

> THE COURT: Do you know who took your money?
>
> INGRAM: No, I didn't know, cause I couldn't, I couldn't move. If I moved I would have been killed.
>
> MR. GORDON: Objection, speculation.
>
> THE COURT: I don't believe so. Overruled.

(TT II., 114).

Petitioner claims the trial court's comments in overruling this objection denied him a fair trial; he says it revealed the court's bias in favor of the state. The state court reviewed this issue for plain error because it found Petitioner did not preserve the issue for appeal. *People v. Banks,* No. 227935 at 3. An issue not preserved for appeal may be reviewed for "plain error." *People v. Carines,* 460 Mich 750, 763; 597 NW2d 130, 138 (1999) Limited review on the merits of a case for plain error does not constitute waiver of procedural default. *Paprocki v. Foltz,* 869 F.2d 281, 285 (6th Cir. 1989). *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991).

This Court reviews de novo the question of whether a state court rested its holding on procedural default, therefore barring federal habeas review. *Combs v. Coyle,* 205 F.3d 269, 275 (6th Cir. 2000). In making this determination the court looks to the last explained state-court judgment. When the state court clearly and expressly relied on a "valid state procedural rule to bar appellate review of a federal constitutional claim, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."*Combs*, 205 F.3d at 274.

The last explained state-court judgment clearly relied on a valid state rule to bar review of the claim. Therefore, the issue may only be reviewed for plain error. The court in *People v. Carines,* 460 Mich 750, 763; 597 NW2d 130, 138 (1999) states the requirement of the plain error rule:

"To avoid forfeiture under the plain error rule, three requirements must be

met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."

Here, Petitioner cannot meet any of the requirements.

No error occurred because the trial court's comments do not express bias in favor of the state. Even if the court's comments did express bias, it is not improper for the court to do so. The Court in *Quercia v. United States,* 286 U.S. 466, 469 (1933) states "[the judge] may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." It is highly improbable that the words Petitioner objects to affected the outcome of the lower court proceedings. Petitioner presents no evidence that the alleged error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Carines,* 597 NW2d at 138.

### C.    HABEAS CLAIM IV: INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner argues that he received ineffective assistance of counsel, because counsel did not present four potential witnesses. To succeed on an ineffective assistance of counsel claim, Petitioner must show the counsel's performance was deficient and that counsel's performance actually prejudiced the defense so as to deprive him of a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). The decision whether to call a witness is a strategic decision, and the court will not substitute its judgment for that of counsel. *People v. Rockney,* 237 Mich App 74, 77; 601 NW2d 887

(1999).

Petition states the case should be remanded for a hearing on his ineffective assistance of counsel claim. The Michigan Court of Appeals found no justification for remand. *People v. Banks,* No. 227935 at 4. The appeals court found that counsel knew of the potential witnesses and decided not to call them. *Id.* The appeals court also stated that nothing in the potential evidence presented a reasonable probability that the outcome of the proceedings would be different if the witnesses were called to testify. *Id.*

The court presumes that a lawyer is competent and places the burden on the client to demonstrate a constitutional violation. *United States v. Pierce* 62 F.3d 818, 833; *see also United States v. Cronic,* 466 U.S. 648, 658 (1984). Petitioner has not rebutted this presumption. The ineffective assistance of counsel claim fails because defense counsel did not make serious errors that actually prejudiced the petitioner.

### D. PROSECUTORIAL MISCONDUCT

The Michigan Court of Appeals found the Petitioner did not preserve these issues for appeal, and therefore reviewed the issues for plain error. The last state-court judgment states the court rested its holding on a valid procedural rule. Therefore the claims may only be reviewed for plain error.

> i. Habeas Claim V: prosecutor's violation of Petitioner's due process rights

Petitioner argues that prosecutor committed misconduct when he argued aiding

and abetting during his rebuttal closing, which resulted in the instruction being given without notice to trial counsel. Petitioner says this denied him a fair trial. The Michigan Court of Appeals determined that there was no prosecutorial misconduct, and that the facts of the case supported the aiding and abetting instruction. *People v. Banks,* No. 227935 at 5.

The Court uses a two step approach in assessing whether improper remarks by a prosecutor during closing arguments warrant a new trial. First, the Court determines whether a prosecutor's remarks were improper. *United States v. Carroll*, 26 F.3d 1380, 1386 (6th Cir. 1994). Then, the court determines whether the impropriety amounts to reversible error. *Id.* When deciding if the remarks were improper the court should consider: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Id.* The court should grant relief on habeas review if the misconduct of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).

There is no evidence presented by the Petitioner that suggests the Court of Appeals unreasonably applied federal law. The prosecutor's remarks merely mentioned the theory of aiding and abetting, a theory supported by the evidence. These remarks were isolated, and the evidence against the Petitioner was strong. The prosecutor's remarks in no way denied the petitioner due process.

### ii.    Habeas Claim VI: use of prior inconsistent statement

Petitioner asserts the prosecutor made improper use of the Petitioner's eight

page statement during closing argument. The statement was admitted for impeachment purposes only and Petitioner claims the prosecutor improperly used the statement as substantive evidence. The Court in *People v. Dalessandro*, 165 Mich App. 569, 419 N.W.2d 609, 615 (1988) stated it was improper for the prosecutor to refer to impeachment evidence in a manner that suggested it was substantive evidence, because a lawyer may not argue facts not in evidence. The Court in *Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir., 2002) stated:

> "Although a prosecutor is allowed to argue reasonable inferences from the evidence, he or she is not allowed to misstate the evidence. It is thus improper for a prosecutor, during closing arguments, to bring to the attention of the jury any purported facts that are not in evidence and are prejudicial."

There is no evidence here that the prosecutor encouraged the jury to consider the evidence as substantive. There is nothing to show that the prosecutor's use of this evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986).

## V.   CONCLUSION

For the above reasons, the Court **DENIES** Petition's request for habeas corpus relief.

**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　　   /s/ Victoria A. Roberts
　　　　　　　　　　　　　　　　　　Victoria A. Roberts
　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  July 20, 2005